**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

TAISHA M.,

        **Plaintiff,**

    v.

                                **Civil Action 3:25-cv-00380**
                                **Judge Walter H. Rice**
                                **Magistrate Judge Kimberly A. Jolson**

COMMISSIONER OF
SOCIAL SECURITY,

        **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Taisha M., brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Undersigned **RECOMMENDS** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## I. BACKGROUND

Plaintiff filed applications for DIB and SSI on March 9, 2023, with an amended onset date of disability beginning on March 9, 2023, due to fibromyalgia, diabetes type II, thyroid disease, anxiety, asthma, and broken right leg-tubular fibula. (R. at 237–43, 244–50, 306). After her applications were denied initially and on reconsideration, Administrative Law Judge Gregory Kenyon (the "ALJ") heard the matter on August 13, 2024. (R. at 63–96). Ultimately, he denied Plaintiff's applications in a written decision on October 22, 2024. (R. at 33–62). The Appeals Council then denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (R. at 1–6).

Plaintiff filed the instant case seeking a review of the Commissioner's decision on November 11, 2025, (Doc. 1), and the Commissioner filed the administrative record on January 12, 2026, (Doc. 8).  The matter is ripe for review.  (*See* Docs.  9, 10, 11).

### A.    Relevant Statements to the Agency and Hearing Testimony and Relevant Medical Evidence

The ALJ summarized Plaintiff's relevant statements to the agency and testimony from the administrative hearing.  (R. at 43–44).  As discussed in more detail below, the ALJ also summarized Plaintiff's medical records as to her mental health issues.  (R. at 47–50).

### B.    The ALJ's Decision

The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through September 30, 2028.  (R. at 38).  The ALJ determined that Plaintiff has not engaged in substantial gainful activity since the amended alleged onset date of March 9, 2023.  (R. at 39). The ALJ determined that Plaintiff has had the following severe impairments: residuals of fractures of the right tibia and fibula, left tibia and fibula fractures, fibromyalgia, diabetes mellitus, depression, an anxiety disorder, and posttraumatic stress disorder ("PTSD").  (*Id.*).  The ALJ, however, found that none of Plaintiff's impairments, either singly or in combination, met or medically equaled a listed impairment.  (*Id.*).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ opined:

[Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) subject to the following limitations: (1) occasional crouching, crawling, kneeling, stooping, and climbing of ramps and stairs; (2) no climbing of ladders, ropes, or scaffolds; (3) no work around hazards such as unprotected heights or dangerous machinery; (4) simple, routine, repetitive tasks; (5) occasional superficial contact with co-workers and supervisors with "superficial contact" defined as being able to receive simple instructions, ask simple questions, and receive performance appraisals but as unable to engage in more complex social interactions such as persuading other people or resolving interpersonal conflicts; (6) no public contact; (7) no fast paced work; (8) no strict production quotas; and (8) limited to jobs which involve very little, if any, change

in the job duties or the work routine from one day to the next.

(R. at 42–43).

Relying on the vocational expert's testimony, the ALJ found that Plaintiff is unable to perform her past relevant work as a receptionist.  (R. at 54).  Further relying on the vocational expert's testimony, the ALJ concluded in consideration of her age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform such as a marker, routing clerk, and bagger.  (R. at 55–56).  Therefore, the ALJ concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, from the amended alleged onset date of March 9, 2023, through the date of this decision (20 CFR 404.1520(g) and 416.920(g))."  (*Id.*).

## II.     STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards."  *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g).  "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently."  *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

**III.    DISCUSSION**

Plaintiff contends that the ALJ improperly evaluated the opinions of Brian Griffiths, Psy.D and state agency psychological reviewers Ken Lovko, Ph.D and Stacy Flowers, Ph.D.  (Doc. 9 at 5–9).  The Commissioner disagrees.  (Doc. 10).  The Undersigned finds the ALJ's treatment of all three opinions adequate.

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from [her] impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a).  To that end, an ALJ "is only required to include in the residual functional capacity those limitations he finds credible and supported by the record." *Beckham v. Comm'r of Soc. Sec.*, No. 1:19-cv-576, 2020 WL 5035451, at *7 (S.D. Ohio Aug. 26, 2020) (quoting *Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 170 (6th Cir. 2020)).  And an ALJ is not required to adopt a medical opinion verbatim.  *See, e.g.*, *Poe*, 342 F. App'x at 157 ("Although the ALJ may not substitute his opinion for that of a physician, he is not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding."); *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015).

The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings.  20 C.F.R. § 404.1513(a)(1)–(5). Regarding two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [Plaintiff]'s medical sources."  20 C.F.R. § 404.1520c(a).  Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2)

4

"[c]onsistency"; (3) "[r]elationship with [Plaintiff]"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability programs policies and evidentiary requirements." § 404.1520c(c)(1)–(5).  Supportability and consistency are the most important of the five factors, and the ALJ must explain how they were considered.  20 C.F.R. § 404.1520c(b)(2).  At base, the role of the ALJ is to articulate how she considered medical opinions and how persuasive she found the medical opinions to be.  *Holston v. Saul*, No. 1:20–CV–1001, 2021 WL 1877173, at *11 (N.D. Ohio Apr. 20, 2021), *report and recommendation adopted*, No. 1:20 CV 1001, 2021 WL 1863256 (N.D. Ohio May 10, 2021).

When evaluating supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the ALJ should find the medical opinion.  20 C.F.R. § 416.920c(c)(1).  When evaluating consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the ALJ should find the medical opinion.  20 C.F.R. § 404.1520c(c)(2).  And although an ALJ may discuss how he or she evaluated the other factors, he or she is not generally required to do so.  *Id.*

The ALJ's role is to articulate how she considered medical opinions and how persuasive she found the medical opinions to be.  *Holston v. Saul*, No. 1:20−CV−1001, 2021 WL 1877173, at *11 (N.D. Ohio Apr. 20, 2021), *report and recommendation adopted*, No. 1:20 CV 1001, 2021 WL 1863256 (N.D. Ohio May 10, 2021).  The role of the Court is not to reweigh the evidence, but to make sure the ALJ considered the proper factors and supported her conclusion with substantial evidence.  *Id.* at *14.

## A.     The ALJ's Consideration of Dr. Griffiths's Opinion

Though Plaintiff begins by pointing out the ALJ rejected the opinions of Plaintiff's treating sources, her first argument focuses on the ALJ's treatment of Dr. Griffiths's August 2023 opinion.[1] (Doc. 9 at 7–8).  The ALJ summarized Dr. Griffiths's consultative examination findings as follows:

In August 2023, [Plaintiff] participated in a psychological consultative examination (Exhibit 8F). She alluded to anxiety and depression when asked about the nature of her disability (Exhibit 8F/3). She reported feeling lost and alone, and she cried "all the time" (Exhibit 8F/5). She withdrew from others and no longer found enjoyment in activities (Exhibit 8F/5). She noted transient suicidal ideation that she would not act on (Exhibit 8F/5). She stated her sleep was poor, and her appetite was diminished (Exhibit 8F/5). Her energy level was low, and she got easily fatigued (Exhibit 8F/5). She rated her attention and concentration as "not that great" (Exhibit 8F/5). She noted mood swings, irritability, agitation, and racing thoughts (Exhibit 8F/5). She described angry outbursts (Exhibit 8F/5). She alluded to a history of impulsive behavior and increased energy (Exhibit 8F/5). She had trouble trusting others and stated she sometimes heard a voice calling her name (Exhibit 8F/5). She stated she had panic attacks "very often" (Exhibit 8F/5). She noted trauma-related symptoms from a range of negative life events, including intrusive thoughts, flashbacks, nightmares, avoidant behaviors, exaggerated startle reflex, and hypervigilance (Exhibit 8F/5). She stated she had never been psychiatrically hospitalized (Exhibit 8F/5). She received counseling, and she also had medication from her primary care provider (Exhibit 8F/5). She reported she was capable of attending to her own grooming and hygiene, performing household chores, and fixing a simple meal, though she had trouble completing them due to lack of energy and chronic pain (Exhibit 8F/5). She had trouble counting money, but she was able to pay bills (Exhibit 8F/6). Others shopped for her because she found it too physically demanding, and she was uncomfortable around people (Exhibit 8F/6). [Plaintiff] noted being terminated from a past job due to arguing with a coworker (Exhibit 8F/4). She sometimes had difficulty getting along with supervisors and coworkers, and she had a strained relationship with customers because they complained about her (Exhibit 8F/4). She reported recent trouble keeping pace with other employees, and she was unable to learn the software (Exhibit 8F/4). She stated she cried in the bathroom in past work (Exhibit 8F/5).

---

[1] The Undersigned does not address the ALJ's evaluation of Plaintiff's treating sources' opinions.  Here, Plaintiff simply notes both as opining more significant limitations than Dr. Griffiths.  (Doc. 9 at 9).  The Undersigned declines to read additional errors where Plaintiff has not provided specific development.  *See, e.g.*, *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").

[Dr. Griffiths] noted that [Plaintiff]'s mood was anxious and depressed, and her affect was flat (Exhibit 8F/6). She looked sad and tired, and she seemed to fight back tears at time (Exhibit 8F/6). She did not express imminent or acute suicidal thinking (Exhibit 8F/6). She displayed a noticeable hand tremor that interfered with her ability to write, but she manifested no other autonomic or motoric indications of anxiety (Exhibit 8F/6). She manifested no indications of anger or hostility (Exhibit 8F/6). Speech was neither pressured nor slowed, and she displayed no loose associations, flight of ideas, or delusional beliefs (Exhibit 8F/6). She manifested no indications of obsessions, compulsions, excessive religiosity, paranoid ideations, delusions, or hallucinations (Exhibit 8F/6). Complaints of limited energy and easy fatigability might be suggestive of somatization (Exhibit 8F/6). She was dressed casually but appropriately, and she was clean and neat in appearance (Exhibit 8F/6). She was a polite and cooperative individual (Exhibit 8F/6). She interacted appropriately with the examiner (Exhibit 8F/8). Her receptive language skills were adequate (Exhibit 8F/6). She was alert, responsive, fully oriented, and not confused (Exhibit 8F/6). Her phraseology, grammatical structure, and vocabulary suggested that she was of average intelligence (Exhibit 8F/6). Her remote recall was adequate, as she was able to provide personal historical information without difficulty (Exhibit 8F/6). She understood and followed simple instructions during the evaluation (Exhibit 8F/8). She followed the conversation during the interview (Exhibit 8F/6). She worked at an adequate rate during the evaluation (Exhibit 8F/8). She did not ask the examiner to repeat and/or clarify questions (Exhibit 8F/6). On examination, she recalled five digits forward, and she remembered four and five digits backward but not consistently (Exhibit 8F/6). The examiner noted her performance was within normal limits (Exhibit 8F/8). She remembered three of three objects after a five-minute delay (Exhibit 8F/6). She performed two correct iterations of serial sevens in thirty seconds (Exhibit 8F/6). The examiner indicated she was slow to perform this task (Exhibit 8F/8). She counted backward from twenty by threes without committing an error (Exhibit 8F/6). She correctly calculated the value of six quarters, but she was unable to mentally calculate twenty-four divided by three (Exhibit 8F/6). There was no information gleaned from the examination to suggest that she cannot be managed in the community (Exhibit 8F/7). Her judgment appeared to be sufficient for her to make decisions affecting her future and to conduct her own living arrangements efficiently (Exhibit 8F/7). She was diagnosed with bipolar II disorder, most recent episode depressed, severe; posttraumatic stress disorder; and a panic disorder (Exhibit 8F/7). However, findings on examination demonstrate better mental functioning than alleged.

(R. at 47–49 (citing R. at 1087–1094)).

The ALJ found Dr. Griffiths's opinion persuasive. (R. at 52). While he noted the opinion was vague, the ALJ found it was not indicative of more than moderate limitations. (*Id.*). In considering the opinion, the ALJ first discussed Dr. Griffiths's findings that Plaintiff's symptoms

may interfere with her ability to keep up with others. (*Id.* (citing R. at 1093 ("Anxiety and/or mood extremes such as depression and/or trauma symptoms like intrusive thoughts, flashbacks and hypervigilance may interfere with [Plaintiff's] ability to keep up with others."))). He next found the opinion supported by Dr. Griffiths's cognitive examination of Plaintiff, "which reflected relatively good mental functioning, and is consistent with her subjective reports at the evaluation." (*Id.* (citing R. at 1091–92)). The ALJ then concluded the opinion was generally consistent with the record. (*Id.*). Particularly, Plaintiff "consistently presented with normal behavior and average eye contact when those findings were discussed." (*Id.* (citing, *e.g.*, R. at 691, 692, 693, 697, 1378, 1379, 1380)). The ALJ also highlighted that psychiatry notes were generally reflective of adequate mental functioning, despite mood and affect abnormalities. (*Id.* (citing, *e.g.*, R. at 1350, 1370, 1372)). Additionally, examination records showed: Plaintiff's associations were intact; her thought processes were goal-directed; she had no abnormal though content, hallucinations, paranoid ideations, or delusions; her memory and fund of knowledge were intact; her attention was focused, and her judgment was only mildly impaired. (*Id.* (citing R. at 1350)). These records, said the ALJ, "generally support" Dr. Griffiths' opinion. (*Id.*).

The Undersigned finds that the ALJ adequately evaluated Dr. Griffiths's opinion for both supportability and consistency. He noted Dr. Griffiths's finding that Plaintiff's symptoms may interfere with her ability to keep up with others. (*Id.*). He observed that the doctor's opinion was supported both by Plaintiff's mental status examination and her subjective complaints at the evaluation. (*Id.*). And he discussed other evidence in the record that was consistent with what Dr. Griffiths's opined. (*Id.*). This type of discussion is what the regulations require.

Still, Plaintiff does not agree with the ALJ's assessment. She argues that the ALJ's finding that the opinion was "indicative of no more than moderate limitations" was flawed. (Doc. 9 at 7

8

(citing R. at 52)). She cites to Dr. Griffiths's observations that Plaintiff "appeared to be an anxious and depressed individual. She looked sad and tired. She seemed to fight back tears, at times. She displayed a hand tremor." (Doc. 9 at 7–8 (citing R.at 1093)). She also highlights Dr. Griffiths's notes that Plaintiff reported crying often, not finding enjoyment in activities, suicidal ideation, poor sleep, poor appetite, low energy, and panic attacks. (Doc. 9 at 8 (citing R. at 1090)). Plaintiff contends that these findings inform more than "moderate limitations." (*Id.*).

At base, though, Plaintiff's assigned error is nothing more than an invitation for the Court to take a second look at the evidence and come to a different conclusion. In other words, Plaintiff wishes that "the ALJ had interpreted the evidence differently." *Glasgow v. Comm'r of Soc. Sec.*, No. 2:15-CV-1831, 2016 WL 2935666, at *7 (S.D. Ohio May 20, 2016), *report and recommendation adopted*, No. 2:15-CV-01831, 2016 WL 4486936 (S.D. Ohio Aug. 26, 2016), *aff'd*, 690 F. App'x 385 (6th Cir. 2017). The law prohibits the Court from re-weighing the evidence and substituting its judgment for that of the ALJ. *See Reynolds*, 424 F. App'x at 414 (citing *Youghiogheny & Ohio Coal Co. v. Webb*,49 F.3d 244, 246 (6th Cir. 1995)). Because the ALJ properly evaluated and articulated the supportability and consistency of Dr. Griffiths's opinion, the ALJ has satisfied the requirements of the regulations. *See* 20 C.F.R. § 404.1520c(b). And substantial evidence supports the ALJ's conclusion. This error is without merit.

## B.    The ALJ's Consideration of the State Agency Reviewers' Opinions

Plaintiff next asserts that the ALJ improperly found state agency reviewers' opinions consistent with the record. (Doc. 9 at 9). The ALJ described Dr. Lovko's and Dr. Flower's opinions as follows:

> Drs. Lovko and Flowers opined there was insufficient evidence related to her mental impairments prior to May 2023, which was three months before her psychological consultative examination (Exhibits 1A, 2A, 7A, and 8A). For the remaining period under review, Drs. Lovko and Flowers opined the claimant had a

9

mild limitation in understanding, remembering, or applying information with moderate limitations in the remaining "paragraph B" criteria (Exhibits 1A, 2A, 7A, and 8A). They opined the claimant was able to understand, remember, and carry out complex tasks (Exhibits 1A, 2A, 7A, and 8A). She was able to maintain concentration, persistence, and pace to carry out complex tasks in a work setting that does not involve a fast-paced production demand (Exhibits 1A, 2A, 7A, and 8A). She was able to interact appropriately with coworkers, supervisors, and the public on a brief, superficial basis (Exhibits 1A, 2A, 7A, and 8A). She was able to adapt to a work setting that does not involve a fast-paced production demand with infrequent changes in expectations and responsibilities (Exhibits 1A, 2A, 7A, and 8A).

(R. at 51 (citing R. at 97–118, 123–142)).

The ALJ found these opinions partially persuasive. (R. at 51). He commented that the doctors explained their opinions with citations to the record. (*Id.*). And their findings were consistent with the record of her presentation in therapy and mental status examinations. (*Id.*). Here, the ALJ specifically cites Plaintiff's normal behavior and eye contact; adequate mental functioning; intact association and memory; goal-directed thought process; lack of abnormal thought content, hallucinations, paranoid ideations, or delusions; focused attention; and only mildly impaired judgment. (R. at 51–52 (citing, *e.g.*, R. at 691, 692, 693, 697, 1350, 1370, 1372, 1378, 1379, 1380)). The ALJ also noted Plaintiff's performance on her psychological consultative examination with Dr. Griffiths and Dr. Griffiths's opinion are consistent with the opinions of Drs. Lovko and Flowers. (R. at 52 (citing R. at 1087–1094)). The ALJ found some of the state agency reviewers' language vague, but he ultimately adapted their opined limitations related to social contact for Plaintiff's RFC. (*Id.*). The ALJ also imposed more restrictive limitations than the doctors opined on the types of tasks Plaintiff could perform due to her "occasional memory and concentration complaints." (*Id.*). The Undersigned concludes the ALJ's discussion adequately articulates the consistency of the state agency reviewers' opinions when compared to the other evidence in the record.

10

Still, Plaintiff pushes back against the ALJ's analysis because of the "scant record" the state agency reviewers evaluated.  (Doc. 9 at 9).  She again points to evidence supporting her position that her "mood and affect" abnormalities are more "debilitating and cause [more] significant limitations" than the ALJ imposed.  (*Id.*).  And she specifically highlights treatment notes of therapist Patricia Kaniuga and Dr. Benjamin Ross, M.D., who emphasized Plaintiff's anxiety and exhaustion and opined that Plaintiff's limitations would cause more than three work absences per month.  (*Id.* (citing R. at 1378, 1382, 1401, 1409)).

Looking beyond the fact that the ALJ found both Ms. Kanigua and Dr. Ross's opinions not persuasive (R. at 52–54), Plaintiff yet again asks the Undersigned to re-weigh the evidence.  That is not the Court's place.  *See Reynolds*, 424 F. App'x at 414.  To the extent Plaintiff submits that the ALJ should have adopted or put more stock in other opinions in the record, it is within the purview of the ALJ to resolve conflicting medical evidence.  *See Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 442 (6th Cir. 2017); *cf. Justice v. Comm'r Soc. Sec. Admin.*, 515 F. App'x 583, 588 (6th Cir. 2013) ("In a battle of the experts, the agency decides who wins.").  Once again, the ALJ complied with the regulations, and his conclusions are supported by substantial evidence.  Nothing here warrants remand.

## IV.     CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that the Court **AFFIRM** the Commissioner's decision denying benefits.

## V.      PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting

authority for the objection(s).  A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made.  Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a forfeiture of the right to have the district judge review the Report and Recommendation *de novo* and in a forfeiture of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *Berkshire v. Dahl*, 928 F.3d 520, 530–31 (6th Cir. 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Date: April 23, 2026                              *s/ Kimberly A. Jolson*
                                                  KIMBERLY A. JOLSON
                                                  UNITED STATES MAGISTRATE JUDGE